Moss, Judge,
delivered the opinion of the court:
On June 6, 1918, plaintiff, Abraham Bauman, entered into a contract with the Government to furnish the necessary labor to manufacture certain garments for use in the Navy, in accordance with certain specifications, the material for which, already cut and ready for manufacture, to be furnished by the Government. Plaintiff was to receive compensation for his services, based on a schedule of prices set forth in the contract, amounting to the total sum of $551,000. The contract provided for four distinct classes of garments, and plaintiff was to complete all garments received by him, up to a specified weekly quantity. Plaintiff proceeded very soon after the date of ,the contract with the performance of the work and continued to manufacture and deliver finished garments to the Government, as the material was furnished him, between the date of the contract, June 6,1918, and April 8, 1919. Prior to February 5, 1919, the deliveries to plaintiff of cut garments had materially decreased, and on that date the defendant wrote a letter to plaintiff in which it was stated: “ * * * the amount of material that enters into the manufacture of these garments is limited, and that the plentiful supply of manufactured articles on hand does not justify the purchase of any more material. Thus no promises can be made as ,to the number of cut garments that will be *420 issued to you, and for these reasons it is suggested that you cancel the unfinished portion of your contract without liability to the Navy.” Thereafter no supplies were furnished by the Government and no deliveries were made by plaintiff, except that on April 8, 1919, a negligible quantity was furnished, which was made up and delivered by plaintiff. Plaintiff has instituted this action for the recovery of damages occasioned by the action of the Government in the cancellation of the contract, in the sum of $166,040.14, made up of an alleged loss of profits amounting to $96,828.43, expense of “ keeping factories open ” $48,440.36, and loss on machinery $20,771.35.
Considering these items in reverse order, it is shown by the record that all the machinery used in the work under this contract had been acquired prior to the date of the contract and had been in use in plaintiff’s factories since 1917. Plaintiff asserts that if he had been permitted to complete the contract without any delay he could have sold certain portions of this machinery at an advantageous price, and that having been compelled to keep such machinery on hand for the completion of his contract he sold same at a substantial loss, and claims the right of recovery against the Government for such alleged loss. The Government is under no obligation whatever to recompense plaintiff for this loss.
In computing the loss alleged to have been sustained in keeping his factories open and in operation for the performance of the work under the contract plaintiff has endeavored to estimate the number of weeks which would have been required 'for the completion of the contract if the cut material had been furnished by the Government. This estimated time is deducted from the total period of about 35 weeks, from June 6, 1918, the date of the contract, to February 5, 1919, the date- of the letter of cancellation; and plaintiff has charged against the Government rent of factories, pay roll, light and power, and “ general administration expenses ” for the period estimated as above explained, amounting in the aggregate to $48,440.36. Plaintiff also adopted this further method of estimating the proportion of overhead expenses properly chargeable to the contract under consideration : It is claimed that plaintiff’s entire business for the year *421 1918 amounted to $3,692,269.12, and that his entire overhead for the same period was $581,972.52, an average of 15.75 per cent of the whole volume of business for overhead expense. That percentage of overhead is then applied to the contract price for the portion of the garments which plaintiff was not permitted to complete, producing the sum of $51,460.15 as the proportion of the overhead applicable to the production of the remainder of the garment^ under the contract. It is not believed that either method used by plaintiff can be relied upon as reflecting the proper percentage of overhead expense to be charged against the Government in this case. But if either should be correct in principle plaintiff has completely destroyed the value of his own analysis by his inconsistent and contradictory course with reference to his claim. In March, 1923, which was three ané one-half years after the cancellation of the contract, plaintiff presented a claim to the Navy Department for alleged damage^ in connection with the contract and the cancellation thereof, consisting of rent, pay for labor, and one-fifth of pay for supervisors and superintendents. In connection with “ item 2 ” plaintiff claimed 26 weeks’ delay. In the record in this action he claimed 22 weeks. In “ item 4 ” he claimed before the Navy board 29 weeks' delay and in the record 25 weeks. In “ items 9 and 10 ” the claim presented to the board showed 3JP/% weeks, and in the record in this case only 10 weeks is claimed. The term “ item ” a,s used above refers to the classification of garments which were manufactured in different factories. The total for rent as presented to the board was $11,895.96, while the total claimed in the record is $7,490.25. In his claim before the board there was charged against the Government for pay roll the sum of $104,818.50, exclusive of the sum of $14,904 for one-fifth of the cost of supervisors and superintendents. In this suit he claims for labor $18,856 and for “ general administration expenses ” $20,520.00, a total of $39,376.00. Plaintiff claims in this action the sum of $1,574.11 for “ light and power.” The claim presented to the board contained no such item. He is also suing for loss of profits in the sum of $96,828.43 and for loss of machinery $48,440.36. Neither of the^e items is referred to in the claim presented to the Navy board. The total of plaintiff’s claim *422 as presented to the board is $131,618.46, and the amount of recovery sought in this action is $193,000, reduced in plaintiff's brief to a claim for $166,040.41.
The ent.ire claim was rejected by the Navy board by a letter dated June 6, 1923, and on December 31, 1924, one and one-half years later, plaintiff filed this suit.
The glaring discrepancies between plaintiff’s claim before the Navy board and as presented to the court in this action are sufficient to discredit the whole claim. The evidence, however, in other respects, as affecting the clajm for loss of profits, as well as the claim for expense in keeping open the factories and the claim for loss on machinery, is unsatisfactory and obviously unreliable. Plaintiff contends, for example, that during the entire period from the date of the contract, June 6, 1918, until its cancellation ,in February, 1919, his factories were not used for any purpose except for the work under this contract. It is inconceivable that plaintiff maintained three factories and paid salaries and other expenses, as shown above, keeping the plants and operatives in idleness for the per.iod claimed. It is also significant that while plaintiff’s business for the year 1918 amounted to $3,692,269.12, composed largely of Government contracts, six months of that period were devoted exclusively to the contract in question.
It might be of interest to note that' in the early part of 1919, neither month nor day disclosed, plaintiff organized a corporation called “ The Bauman Clothing Corporation,” of which plaintiff was president. This corporation took over certain of the assets of A. Bauman, the precise nature and description of which do not clearly appear. Certain books kept by A. Bauman and by the Bauman Clothing Corporation were not produced and were reported to be lost. It is believed that such books would have been helpful in the solution of the controversy involved here.in. The Bauman Clothing Corporation later became financially involved and its assets were disposed of in bankruptcy proceedings. Thereafter plaintiff organized another corporation by the name of the Wear Pledge Corporation, of Avhich plaintiff is president.
*423 There .is another transaction which should also be mentioned: While it is declared in the sworn petition that “ claimant is the sole owner of the claim set forth in this petition and has made no assignment or transfer thereof, or of any part thereof or interest therein; * * it appears
in the record that on July 2, 1920, five months after the contract was canceled, plaintiff assigned to his wife, Frances H. Bauman, the claim sued on herein; said assignment is in the following language:
“ I, Abraham Bauman, hereby assign to Frances H. Bau-man the claim with U. S. A. dated June 6,1918, contract No. 1080, together with all rights and claims which I have or can have upon or under said contract.
(Signed) Abbaham BaumaN.”
On Ju,ly 6,1922, Frances H. Bauman reassigned said claim to plaintiff. This document reads as follows:
“ I, Frances H. Bauman, hereby assign to Abraham Bau-man the agreement with Ú. S. A. dated June 6, 1918, contract No. 1080, together with all right and claim which I have or can have-upon or under said contract.
(Signed) FbaNces H. BaumaN.”
It is claimed by plaintiff that the consideration for the assignment to his wife was the sum of $50,000, furnished plaintiff by Mrs. Bauman. There was no consideration for the reassignment and there has been no repayment of any part of the sum alleged to have been furnished plaintiff by his wife.
On the essential features of the case the plaintiff is the only witness presented. Under the evidence it is not possible for the court to determine with any degree of certainty the damages, ,if any, sustained by plaintiff by reason of the cancellation of the contract. It is therefore adjudged that plaintiff’s petition be, and the same is hereby, dismissed.
Geaham, Judge; Booth, Judge; and Campbell, Chief Justice, concur.